# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:10cv043

| | |
|---|---|
| SUSAN MARIE STANGEL, ) ) Plaintiff, ) ) vs. ) ) MICHAEL J. ASTRUE, ) Commissioner of Social Security, ) ) Defendant. ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 7] and the Defendant's Motion for Summary Judgment. [Doc. 13].

## I. PROCEDURAL HISTORY

The Plaintiff Susan Marie Stangel filed an application for a period of disability and disability insurance benefits on January 9, 2007, alleging that she had become disabled as of May 13, 2005, due to right shoulder, arm, and hand pain and limitations. [Transcript ("T.") 78]. The Plaintiff's application was denied initially and on reconsideration. [T. 45-48]. A hearing was held before Administrative Law Judge ("ALJ") Michael Davenport on May 5, 2009. [T. 21-43]. On May 29, 2009, the ALJ issued a decision denying the Plaintiff

benefits. [T. 10-18]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-3]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets

or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTUAL BACKGROUND

At her hearing, the Plaintiff testified that she was 44 years old, had completed the ninth or tenth grade, and obtained her GED. [T. 23]. Her past relevant work included work as a secretary.

Plaintiff injured her right shoulder at work while lifting books out of a car in May 2004. [T. 24, 131, 158]. Plaintiff testified that as a result of that injury, she experiences pain in her right shoulder, down her back, and down her arm to the fingertips. Her arm tingles frequently, and is numb, cold and blue. [T. 26-27].

Dr. Richard Balsam treated Plaintiff from May 2005 through April 2006 for her shoulder injury. Upon initial examination, Dr. Balsam noted diffuse tenderness throughout the shoulder, limited abduction to 70 degrees, and pain on external and internal rotation of the shoulder. He stated that he thought the injury was a soft tissue trauma. Records show that Plaintiff went to physical therapy, received injections, and took medication for treatment. Dr. Balsam noted that Plaintiff's injury improved with physical therapy. He reported that Plaintiff had tendonitis in the right shoulder following repetitive movements such as writing and typing, and he recommended that she do another job without repetitive motions. By July 2005, he noted that Plaintiff's range of motion was good. In September 2005, Dr. Balsam reported that despite chronic tendonitis in the right shoulder Plaintiff had full range of motion and normal strength. An MRI of Plaintiff's right shoulder revealed mild to moderate degenerative change involving the acromioclavicular articulation with some capsular hypertrophy and borderline impingement. There were no rotator cuff tears. [T. 142-61].

In October 2005, Dr. Balsam noted right shoulder pain with repetitive motions and lifting, but stated that Plaintiff had full range of motion and no tenderness in the right shoulder. [T. 148]. He recommended that Plaintiff not

5

lift over ten pounds or do repetitive motion. [Id.]. In April 2006, Dr. Balsam reported that Plaintiff continued to experience pain, but range of motion was basically normal. [T. 142]. He noted that doing any work with lifting or resistence increased her pain, but he was not certain if the injury was permanent. [T. 142].

Plaintiff underwent an independent neurological examination on September 16, 2005 with Dr. Arnold Goran. At the time, Plaintiff reported that she had nerve conduction studies done on September 13, 2005, with no evidence of carpel tunnel syndrome. Plaintiff's primary complaint was of pain in her dominant upper right extremity including the shoulder and the hand. Upon examination, Dr. Goran noted that Plaintiff was in no acute distress and had full range of motion of the head, neck, and shoulders. Plaintiff reported pain on palpation in the right shoulder, but no pain to palpation along the vertebral border of either scapula. A motor examination of the upper extremities was within normal limits. There was slight desensitization ("faint decreased appreciation of pin") at the inner aspect of the mid right forearm, but a Tinel test (Distal Tingling on Percussion test) was negative at the wrist, and biceps and triceps jerks (deep tendon reflexes) were bilaterally positive. Plaintiff had normal tone and temperature in her upper extremities and her

6

radial pulses were well palpated. Dr. Goran diagnosed Plaintiff with a right shoulder injury and rule out radiculopathy. He opined that Plaintiff was limited in her ability to use her right upper extremity with respect to performing repetitive motions and lifting more than ten pounds on a repetitive basis with her right hand. [T. 131-33].

Plaintiff was examined by Dr. Paul Kreienberg in April 2006. At that time, Plaintiff complained of numbness and tingling in her right arm in the shoulder and occasionally her fingers. Upon examination, it was noted that Plaintiff had some mild shoulder droop on the right hand side with sensitivity in the area of the trapezius rhomboid muscle in the shoulder and the deltopectoral grove. It was noted, however, that she had normal range of motion in the shoulder, normal motor strength in the entire arm and hand, and normal motor strength in the shoulder area. Plaintiff had no tenderness over the anterior scalene muscle and normal pulses. There was no circulatory deficit. Dr. Kreienberg recommended Procardia for treatment. [Tr. 138].

In May 2006, Plaintiff saw Dr. R. Clement Darling, III for complaints of occasional right hand discoloration, numbness, and tingling. On physical examination, however, Plaintiff had no discoloration and strong radial and ulnar pulse. [T. 203].

7

In June 2006, Dr. Gregory Shankman conducted an orthopedic evaluation of Plaintiff. Dr. Shankman diagnosed borderline impingement problem of the right shoulder and recommended that Plaintiff take medication for pain relief. He stated that Plaintiff demonstrated only a mild, partial degree of disability, and he indicated that Plaintiff could return to her position as a secretary with modifications in her lifting and appropriate pain management. [T. 204-05].

Dr. Anthony Guidarelli also conducted an orthopedic evaluation of Plaintiff in October 2006. Dr. Guidarelli diagnosed Plaintiff with a traction injury, right shoulder, and brachial plexus, and possible thoracic outlet syndrome. He concluded, however, that Plaintiff's disability from these conditions was moderate and that she should only avoid heavy lifting greater than 10 or 15 pounds. [T. 206-10].

Plaintiff sought treatment from Dr. Brian Quinn at Capital Region Orthopaedic Group beginning in July 2005. In an examination on July 6, 2005, Dr. Quinn found that Plaintiff had good musculature and full range of motion in the right shoulder and elbow with minimal complaint. He noted that her hand was normal with no evidence of carpal tunnel pathology. [T. 253-54]. In December 2005, a physical examination of Plaintiff's right shoulder

8

and cervical spine were negative. An x-ray of the cervical spine also was negative. [T. 251]. While an MRI of Plaintiff's cervical spine in January 2006 revealed a disc bulging at the C3-C4 level, there was no evidence of canal stenosis. [T. 170]. In February 2006, Dr. Quinn reviewed Plaintiff's medical history and treatment and found no orthopaedic disabling diagnosis. [T. 250]. In March 2007, another doctor at Capital Region Orthopaedic Group, Dr. Anjum Iqbal, encouraged Plaintiff to return to work with proper ergonomics after treatment with a facet block. [T. 284].

Plaintiff also received treatment from Dr. Hani Midani of Capital Neurological Associates. In May 2006, Dr. Midani opined that Plaintiff had no disability from any neurological issues. In December 2006, Dr. Midani concluded his treatment of Plaintiff and referred her for evaluation and treatment in pain management He noted Plaintiff's problems as right shoulder pain and dysfunction with limitation of range of motion; intermittent paresthesia of the right upper extremity with slight hypesthesia in the C7 nerve distribution without objective deficit; and intermittent vasomotor changes. He started her on treatment with Cymbalta. [T. 211-33].

Plaintiff was seen for a consultative orthopedic examination in March 2007 by Amelita Balagtas, M.D. Dr. Balagtas reported that Plaintiff could do

9

her self-care, grooming, dressing, and driving. Upon examination, Plaintiff had intact hand and finger dexterity, full range of motion in the cervical, thoracic, and lumbar spine, negative straight leg raising, full range of motion in the lower extremities with intact strength, and intact reflexes in the lower extremities. In her right upper extremity, Plaintiff had limited range of motion in her right shoulder, but internal and external rotation were full. Plaintiff had tenderness over the superior and anterior aspect of the right shoulder and tenderness at the right upper trapezius muscle and thoracic paraspinals. Plaintiff's biceps and triceps strength was intact with no muscle atrophy. Sensation was decreased on the right, but reflexes were normal. Dr. Balagtas diagnosed right shoulder pain, status post injury, and rule out brachial plexus injury. She opined that Plaintiff would have moderate limitations in activities that required lifting, carrying, and reaching involving the right upper extremity. [T. 257-59].

In June 2007, Plaintiff was seen by Dr. R. Maxwell Alley of the Capital Region Orthopaedic Group. He opined that Plaintiff had a moderate permanent partial disability related to her right upper extremity brachioplexus injury. [T. 276-77].

In August 2007 Plaintiff reported to Dr. Andrew Durbin that she was having continued problems with right shoulder pain with a tingling, itching sensation into the right arm. Upon examination, Plaintiff exhibited vasomotor instability. While the right hand was minimally dusky in appearance when compared with the left and cooler to touch, there was no swelling. Plaintiff reported that she was not terribly interested in pursuing other interventions and wanted to close her workers' compensation case. Dr. Durbin noted that the Plaintiff would continue to use the PLO type gel that had been somewhat helpful. He opined that she had permanent partial disability due to her shoulder injury. [T. 269-70].

A nonexamining Disability Examiner from the state agency who reviewed the medical evidence of record in May 2007 opined that Plaintiff could perform light work with a limitation on overhead lifting due to right shoulder pain. [T. 261-66].[1]

At a neurological consultation with Dr. Michael H. Young in July 2008, Plaintiff reported that she experienced persistent pain mostly treated with ibuprofen and recently gabapentin, which she reported she was tolerating

---

[1]The state agency examiner is identified only as "R. Kahler." Kahler's credentials for offering this opinion are not indicated, nor is there any record of any acceptable medical source affirming this opinion.

well. After an examination, Dr. Young stated that he did not believe Plaintiff needed any additional neurologic evaluation or treatment, and he believed that there may be a myofascial component of Plaintiff's pain given prominent pressure points over her right arm. He approved her current medications, and no follow-up visits were scheduled. [T. 287-89].

Treatment notes from Plaintiff's physician Dr. Rick R. Burris from May through September 2008 indicate that Plaintiff continued to experience pain in her upper right extremity. [T. 290-302]. In August 2008, however, Dr. Burris noted that she was not currently taking any pain medication. [T. 293]. In September, it was noted that Plaintiff was not in any acute distress. [T. 301].

At the ALJ hearing, Plaintiff testified that her arm became "incredibly sensitive" after the injury to the point that she could not rest against the back of a chair. [T. 28]. She reported that the pain in her shoulder and arm worsens with movement, stress and changes in the weather. [T. 28-9]. She wears a brace, uses a wrist pillow to prop up her arm, and sits on the edges of chairs in order to reduce her pain. [T. 28].

Plaintiff stated that she can sit or drive for 30 minutes at a time. [T. 32-33]. She stated that driving was better than being a passenger since she

could not rest against the seat. [T. 34]. Plaintiff reported that she has to change positions often and has to hold her right arm up in order to avoid pain. She stated that she sleeps for only two to three hours at a time, even when taking medication to help her sleep. [T. 35-36].

With respect to activities of daily living, Plaintiff testified that she sometimes washes dishes and does housework. She testified, however, that she cannot clean a whole room without taking a break. [T. 32]. She stated that she can dress herself, but cannot use buttons. Bathing is painful. [T. 37]. She stated that she can sometimes lift a glass with her right hand, but that her hand cannot be fully opened. [T. 37].

A vocational expert (VE) called to testify at the Plaintiff's ALJ hearing. classified her past work as light and semi-skilled. [T. 40]. To a hypothetical question describing a worker limited to light work with no working overhead or reaching with her right arm, the VE testified that there were a significant number of jobs in the national economy that such a person could perform, such as a machine inspector and hostess/greeter. The VE further testified that there were also a significant number of jobs that a worker limited to sedentary work with the same arm limitations could perform, such as security monitor and receptionist. [T. 41-42].

## V. THE ALJ'S DECISION

On May 29, 2009, the ALJ issued a decision denying the Plaintiff's claim. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2010 and that she had not engaged in any substantial gainful activity since May 13, 2005. The ALJ then determined the following severe impairments: right shoulder pain, cervical facet syndrome, and right shoulder impingement syndrome. The ALJ concluded that her impairments did not meet or equal a listing. He then determined that Plaintiff retained the residual functional capacity to perform a light work that does not involve overhead use of the right arm. [T. 12]. He found that Plaintiff was unable to perform her past relevant work. He further found that Plaintiff was a younger individual with a high school education, and that transferability of job skills was not an issue. At step five, the ALJ concluded that significant work existed in the national economy that Plaintiff could perform. [T. 17]. Accordingly, he concluded that the Plaintiff was not disabled from May 13, 2005 through the date of his decision. [T. 18].

## VI. DISCUSSION

On appeal, Plaintiff asserts two assignments of error. First, Plaintiff contends that the ALJ failed to consider the record evidence indicating that

her condition continued to worsen after the consultative and agency examinations were performed. Second, Plaintiff argues that the ALJ erred in his assessment of her pain and other symptoms.

**A.  The ALJ followed applicable law and his RFC assessment at step four is supported by substantial evidence.**

Plaintiff has the burden of proof with regard to showing her disability through step four of the sequential evaluation, the step where residual functional capacity is assessed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1973). While the ALJ is obliged to review the entire record, the ALJ is not required to discuss every item of evidence. See Taylor v. Astrue, No. 4:07-CV-160-FL, 2009 WL 50156, at *7 n.3 (E.D.N.C. Jan. 7, 2009); Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D. Ill. 1991).

Contrary to Plaintiff's contentions, the ALJ did not disregard the record following her consultative and agency examinations. The ALJ explicitly discussed his review of the records of Drs. Alley, Burris and Young, who treated Plaintiff in 2007 and 2008. [T. 15-16]. These records, however, do not demonstrate a significant worsening of her pain, nor do they demonstrate any escalation of Plaintiff's limitations. Moreover, Plaintiff's own testimony at the ALJ hearing only hinted at a worsening of her condition over time; while she conceded that the pain in "the elbow and the shoulder blade and . . . up

15

in the shoulder, has been constant," [T. 29], even though her activity level had continued to decline. [T. 38]. None of this evidence, however, supports a finding of any different limitations in the major physical or mental work functions assessed by the ALJ.

While Plaintiff contends that her testimony regarding her pain and disabling limitations went "unrefuted," her testimony was in fact contradicted by the medical evidence of record. Plaintiff's treating physicians consistently urged her to go back to work -- either to her former job or another job -- and as the ALJ noted, her treating physicians classified her with only moderate partial disability for the purpose of workers' compensation. Plaintiff's treatment records further demonstrate consistent objective testing showing minimal loss of range of shoulder motion, and virtually no other objective evidence of limitations. [T. 16]. While Dr. Balsam's initially restricted Plaintiff shortly after her injury to lifting no more than ten pounds, there is no indication in the record that this was intended to be a permanent restriction.

For all of these reasons, the Court concludes that there is substantial evidence to support the ALJ's assessment of Plaintiff's residual functional capacity.

**B. The ALJ's assessment of Plaintiff's pain and symptoms followed applicable law and was supported by substantial evidence.**

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996) (quoting 20 C.F.R. §§ 416.929(b) and 404.1529(b)). If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595 (citing 20 C.F.R. §§ 416.929(c)(1) and 404.1529(c)(1)).

Having found Plaintiff's right shoulder pain to be a severe condition which reasonably could be expected to cause pain, the ALJ proceeded to recount the various inconsistencies between the medical evidence of record and her hearing testimony. [T. 16]. Specifically, he noted consistently negative objective findings and their inconsistency with her reports of her limitations and her activities at the hearing. He further noted the inconsistency between Plaintiff's various activities of daily living and her claim of disabling limitations. As the ALJ correctly noted, Plaintiff made inconsistent reports

17

about the effects of her medication, refused recommended injections, and asked to have her workers compensation case closed. [Id.]. Indeed, on at least one occasion in 2006, it was noted that she was not taking any medication for pain. Further, although she was referred to pain management [T. 212], there is no record evidence that she ever pursued such treatment.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Given the deference due to the ALJ's credibility determination, the Court finds that the ALJ's analysis of Plaintiff's pain and symptoms followed applicable law and is supported by substantial evidence.

## VII. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding that Plaintiff was not disabled through the date of his decision.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 13] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 7] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 7, 2011

Martin Reidinger
United States District Judge